**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION**

_____

)
BEVERLY STAYART,                             )
a/k/a BEV STAYART,                           )
an individual,                               )
     *Plaintiff*,                            )
                                         )
                                         )     Case No. 10-CV-00043-LA
v.                                           )
                                         )
YAHOO! INC., a Delaware corporation;         )
                                         )
     *Defendant*.                            )
_____

### REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
_____

Plaintiff Beverly Stayart, in her opposition to defendant Yahoo!, Inc.'s ("Yahoo!") motion to

dismiss, takes her third swing at pleading a viable claim against Yahoo!.  Strike three.  In her prior

action against Yahoo! in this Court, Plaintiff alleged that Yahoo! had run afoul of the same statute at

issue here (as well as the Lanham Act) based on its display of snippets of third party websites in

search results that contained both Plaintiff's name and references to the brand name drug "Levitra."

*Stayart v. Yahoo! Inc.*, 651 F. Supp. 2d 873, 889 (E.D. Wis. 2009) ("*Stayart I*").  This court dismissed

the federal claims with prejudice and her state claims for lack of jurisdiction.  *Id.*

Undeterred, Plaintiff made a second attempt by filing this action, again asserting her Wisconsin

state claims, and this time alleging liability based on "search suggestions" for "Bev Stayart Levitra"

displayed on a yahoo.com search results page.  (Compl. ¶ 37-45).  Faced with Yahoo!'s argument, on

its motion to dismiss, that it could not be held liable for displaying Plaintiff's name in connection

with a product Yahoo! did not sell, Plaintiff changes course a third time in her Opposition brief, in

1

which she argues that it is the *sale* of "Beverly Stayart" as a keyword to drive traffic to sponsored search results that violates Wisconsin law. Even if this attempted amendment to her complaint were permissible, which it is not, Plaintiff's claims still fail because:

- Defendant did not "use" Plaintiff's name as contemplated by Wis. Stat. § 955.50 because it did not use her name in connection with advertising any of its own products or services.

- Plaintiff does not have the requisite notoriety to have a "property right" in her name sufficient to state a claim under § 955.50.

- Section 230 of the CDA bars claims based on a search engine's algorithmic suggestion of alternative search query terms, regardless of whether the suggested terms have been purchased for sponsored searches.

- Plaintiff's claims are not intellectual property claims within the meaning of the CDA because, unlike federal intellectual property claims, they do not protect any sort of commercial interest.

- Plaintiff has not alleged facts to support damages sufficient to confer diversity jurisdiction.

As such, Plaintiffs claims should be dismissed with prejudice, or in the alternative, this Court should stay this action pending the Seventh Circuit's decision in *Stayart I*, which could significantly streamline the issues before this court.

## I.  Stayart Improperly Attempts to Amend Her Complaint in Her Response

Stayart argues in her Opposition that Yahoo! "used" her name commercially because it suggested the alternate search term "Bev Stayart Levitra" to users who had already searched for the term "Bev Stayart," and when users then clicked on the alternate search term, the resulting page produced sponsored search links, from which Yahoo! derived revenue on a Pay-Per-Click basis *if* a

2

user clicked on advertisements for Levitra. (Resp. at 9-11). Additionally, Plaintiff now claims that Yahoo! "repeatedly" *sold* the keyword phrase "Beverly Stayart Levitra" itself. (Resp. at 13). Her complaint, however, makes no such allegations. The complaint *only* alleges that Yahoo!'s display of the phrase "Bev Stayart Levitra" on each page of Bev Stayart search results "falsely impl[ied] Stayart's endorsement of 'Levitra.'" (Compl. ¶ 39-46, ¶ 50). The complaint makes no mention whatsoever of "Sponsored Search" or the nature of Yahoo!'s sponsored search advertising program. (Resp. at 8-9 (providing no citations to complaint)).

Plaintiff may not amend her complaint through a responsive pleading. *See Perkins v. Silverstein,* 939 F.2d 463, 470 n. 6 (7th Cir.1991) (responsive pleadings cannot amend complaint to defeat a motion to dismiss); *Stayart v. Yahoo! Inc.*, 651 F.Supp.2d 873, 889 (E.D. Wis. 2009). As such, Plaintiff's arguments that Yahoo!'s sponsored search links appearing on search result pages somehow give rise to an actionable claim for invasion of privacy should be disregarded and her complaint dismissed.

## II.   Plaintiff Could Not Amend Her Complaint to Conform to the Arguments Presented in Her Response Because She Lacks a Good Faith Basis for those Allegations.

While Yahoo! does not intend to convert this motion to dismiss into one for summary judgment, it is compelled to alert this court that not only are the new "facts" Plaintiff alleges on "information and belief" in her response not within the four corners of her complaint, they are without foundation and fact, and are *contrary* to information Yahoo! has provided to her. Consequently, Plaintiff lacks a good faith basis to make allegations consistent with the arguments presented in her motion in an amended complaint. In a letter responding to her complaint in this action, Yahoo! informed plaintiff of a number of basic facts inconsistent with Plaintiff's arguments.

3

First, Yahoo! informed plaintiff that "[l]like the search results and 'snippets' at issue in the first action, the 'search assist' and 'see also' text are not authored by Yahoo! but are generated by Yahoo!'s search algorithm based on search query content *provided by third party users* of Yahoo!'s search engine. Specifically, the 'search assist' and 'see also' phrases both result directly from users inputting those phrases as search terms." (Ex. A, Ltr. Fr. C. Genetski to G. Stayart, Feb. 11, 2010).[1] As such, Plaintiff has no good faith basis for asserting a claim based on allegations claiming that Yahoo! created the search assist phrase or that it offered that phrase for sale to advertisers.

## III.  A Stay Until the Seventh Circuit Reaches Its Decision in *Stayart I* is Appropriate

In footnote 13 of her brief, Plaintiff admits that the propriety of state law claims similar to those at issue here is currently before the Seventh Circuit. Indeed, Yahoo! has argued in that case that even if the court exercises jurisdiction over those claims, they should be dismissed—raising many of the same arguments before the court here. As such, a stay of these proceedings until the Seventh Circuit issues its decision is advisable, given the early stage of this litigation, the identity of the parties in both cases, and the fact that a decision in *Stayart I* could significantly streamline the issues before this Court in a litigation involving the exact same parties. *Seaquist Closures LLC v. Rexam Plastics,* No. 08 C 0106, 2008 WL 4691792, at *1 (E.D. Wis. Oct. 22, 2008); *Tap Pharma. Prods., Inc. v. Atrix Labs, Inc.,* No. 03 C 7822, 2004 WL 422697, at *1 (N.D. Ill. Mar. 3, 2004); *Baxter Int'l, Inc., v. Fresenius Med. Care Holdings, Inc.,* No. 08 C 2389, 2008 WL 4395854, at *3 (N.D. Ill. Sept. 25, 2008).

---

[1] Yahoo! also informed Plaintiff that it had blocked the search term "Levitra" from ever appearing as a "search assist" or "see also" phrase in combination with a term appearing to be a proper name, thus mooting Plaintiff's claims for injunctive relief. (Ex. A.)

4

## IV.    Yahoo! Has Not Used "Bev Stayart" or "Beverly Stayart" as Required by § 995.50.

Under Wis. Stat. § 995.50, a plaintiff must allege and prove that the defendant "use[d] for advertising purposes or purposes of trade" the name of a living person.  Plaintiff appears to concede that Yahoo! did not "use" her name to promote Yahoo!'s own products and services.  Instead, Plaintiff switches course and attempts to amend her complaint in her response by arguing solely that Yahoo!—as opposed to third party advertisers—"used" Beverly Stayart through "Yahoo!'s repeated sale of the name 'Bev Stayart' as part of the keyword phrase 'Bev Stayart Levitra' to trigger keyword advertising."  (Resp. at 13).  The sale of Plaintiff's name as a keyword phrase, however, is not alleged in the complaint, lacks any basis in fact, and is inconsistent with the complaint itself and the exhibits attached thereto.[2]  In fact, the only trademark sold in this case is "Levitra."

The complaint contains no allegation that Yahoo! sold the keyword "Beverly Stayart" or the phrase "Beverly Stayart Levitra."  Instead, the gravamen of the complaint is that Yahoo! invaded Plaintiff's privacy by suggesting that users search for "Bev Stayart Levitra" when they performed a search for "Bev Stayart."  (Compl. ¶¶ 37-45.)  The complaint alleges that the appearance of such a phrase "associat[es] Stayart with 'Levitra'…."  (Compl. ¶ 41).  The Complaint does not, however, allege that Yahoo! uses the "search suggestion" to promote Yahoo!.

The exhibits to the complaint are also inconsistent with Plaintiff's arguments.  In the exhibits showing the search results for "Beverly Stayart" or "Bev Stayart," there are *no* sponsored results because the terms "Bev Stayart" and "Beverly Stayart" were not sold as sponsored search terms.

---

[2] Even if there is, as Plaintiff claims, a separate claim for common law invasion of privacy, in Wisconsin Supreme Court made clear in *Hirsch v. S.C. Johnson & Son, Inc.*, 90 Wis. 2d 379, 387, 280 N.W.2d 129, 132 (1979) that even if such a claim survived enactment of the statute, the elements are the same.

5

(*See, e.g.,* Dkt. 1, Ex. 6).  Furthermore, even if "Beverly Stayart" had been sold as a sponsored search term, the sponsored search ads themselves do not refer to Ms. Stayart, and thus do not create any impression that she has endorsed Levitra.  For example, the only sponsored search link in Exhibit 7 to Plaintiff's complaint makes no reference to Plaintiff, and only advertises an Online Pharmacy where consumers may fill their prescription for Levitra (levitra.kwikmed.com).

Yahoo!'s policy regarding its Search Marketing program, which Plaintiff cites, confirms this understanding.  The policy states that if a trademark owner has a concern that a search term "associated with an advertiser's listing is an improper use," it should report that use to Yahoo!. (Resp. at Ex. A). The policy thus refers to the search term related to the *advertisement*—here, the appearance and use of "Levitra" by the advertiser in the advertisement that appear as sponsored links.  "Beverly Stayart" on the other hand, does not appear in the advertising copy associated with the sponsored links.  The only statements that refer to Beverly Stayart and Levitra were contained in the search snippets attached to Plaintiff's first complaint in *Stayart I*. Plaintiff has, however, already had those claims dismissed.  *See Stayart I*, 651 F. Supp. 2d at 889.  Moreover, Plaintiff of course does not and cannot have a trademark for her name.

Because the sale of Plaintiff's name as a keyword has not, and cannot, be alleged, the numerous cases Plaintiff cites involving the *sale* of a trademarked name as a keyword are irrelevant to this Court's analysis.  *See e.g. Gov't Employees Ins. Co. v. Google, Inc.*, 330 F. Supp. 2d 700, 703-04 (E.D. Va. 2004); *Buying for the Home v. Humble Abode, LLC*, 459 F. Supp. 2d 310 (D.N.J. 2006); *J.G. Wentworth, S.S.C. LP v. Settlement Funding, LLC*, 2007 U.S. Dist. LEXIS 288 (E.D. Pa., Jan 4, 2007); *Boston Duck Tours, LP v. Super Duck Tours, LLC*, 527 F. Supp. 2d 205, 207 (D. Mass. 2007); *Morningware, Inc. v. Hearthware Home Prods., Inc.*, 673 F. Supp. 2d 630 (N.D. Ill. 2009).  Additionally,

6

in many of the cases Plaintiff cites, the defendant found to "use" the word is the third-party advertiser that purchased the keyword, *not the search engine.* The only case Plaintiff cites against a search engine, *Gov't Employees Insurance Co. v. Google, Inc.*, turned on the sale of the plaintiff's "GEICO" trademark—*not* suggestion of GEICO as a search term when paired with another party's name as the complaint alleges here. 330 F. Supp. 2d at 703.[3]

## V.     Plaintiff Must Have a Property Right or Commercial Interest in Her Name Under Wisconsin Law to State a Claim Under § 995.50.

Plaintiff appears to concede that she has no "property right" or "commercial interest" in her name, failing to address any of Defendant's arguments that she lacks such a commercial interest or by attempting to distinguish this court's reasoning in *Stayart (I).* Instead, Plaintiff cites an unpublished federal district court case's parenthetical citation of *Hirsch v. S.C. Johnson & Son, Inc.*, 90 Wis. 2d 379, 387, 280 N.W.2d 129, 132 (1979), for the proposition that Wisconsin law does not require plaintiffs to demonstrate a "commercial interest" in their name to state a claim for misappropriation. In addition to Defendant's full discussion of the *Hirsch* case in its initial motion which makes clear such an interest is required, even the case Plaintiff cites, *Conrad v. Madison Festivals, Inc.*, 2009 WL 3018031 at *4 (W.D. Wis. 2009), supports the view that a commercial interest is required. In *Conrad*, the plaintiff was the "Banana Lady" who frequently used that well-defined and fanciful image by performing for children as a part of her "Banana Productions" company that arranged family events related to children's health and wellness—a *commercial purpose*—thus supporting a finding that a commercial interest is required. Furthermore, the sentence from *Hirsh* quoted in *Conrad* stands only for the proposition that a plaintiff may state a

---

[3] This Court has already determined that Plaintiff lacks any protectable commercial interest in her name under the Lanham Act, much less protected trademark status. *Stayart I.*

claim for use of a nickname or trade name and that § 995.50 does not limit actions to use of a plaintiff's legal name. *Hirsch*, 280 N.W.2d at 129. The requirement that a plaintiff have a property interest in that nickname remains intact. *Id.* (allowing professional football player plaintiff to maintain a claim under § 995.50 for use of his nickname "Crazylegs").

Additionally, far from being "ludicrous" as Plaintiff suggests, this Court has found that Ms. Stayart does not have a commercial interest in her name, holding that

> Stayart is not engaged in the commercial marketing of her identity, and she does not allege an intent to commercialize. Stayart alleges that her name has commercial value, but it is clear that Stayart's complaint arises from the distasteful association of her name with pornographic images, advertisements for sexual dysfunction drugs, and a sexually-oriented dating service. *** Therefore, in the context of Stayart's detailed, prolix complaint, the Court must conclude that the absence of any factual allegations pertaining to the commercialization of her identity means that she cannot meet this basic requirement for obtaining relief under the Lanham Act.

*Stayart v. Yahoo Inc.*, 651 F. Supp. 2d 873, 881-882 (2009). The present complaint is similarly absent of any allegations of commercial use of Plaintiff's name. This absence is fatal to her Complaint.

## VI. Yahoo!'s Algorithm Only Collects What Users Input and Thus Does Not Preclude Yahoo!'s Immunity Under the CDA

Whether or not Yahoo!'s algorithm is an "agent," as Plaintiff argues, is irrelevant. The data the algorithm uses to provide the search assist queries is provided by *third parties* in the same way that website content is provided by third parties. An algorithm or a human can sort through *third party* data and provide basic "editor" functions without losing CDA immunity. In fact, the immunity provision of the CDA, § 230(c) is entitled "Protection for 'good samaritan' blocking and screening of offensive material," which in and of itself contemplates that interactive computer services will *edit*

8

the content available on their sites through some means. Unsurprisingly, courts have found that a service provider's immunity as a publisher extends to its "exercise of a publisher's traditional editorial functions" with respect to third-party information "such as deciding whether to publish, withdraw, postpone, or alter it." *Zeran v. America Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997) *accord Universal Comm'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 422 (1st Cir. 2007)  *Doe v. Friendfinder Network, Inc.*, 540 F. Supp. 2d 288, 297 (D.N.H. 2008) ("[A] service provider's exercise of its editorial prerogatives as to information from another content provider does not transform the service provider into the content provider under § 230."). No matter which algorithm Yahoo! chooses or how it edits that information, the information displayed comes from a third party source and the CDA protects even the "exercise of editorial prerogatives as to information from another content provider." *Friendfinder*, 540 F. Supp. 2d at 297. Yahoo!'s immunity remains intact and Plaintiff's claims cannot stand.

## VII.   Plaintiff's Claims Do Not Fall within § 230(e)(2).

Plaintiff ignores Defendant's argument that "intellectual property" claims under § 230(e)(2) must share traits in common with federal intellectual property claims, namely the presence of a protected commercial interest. Instead, Plaintiff argues that all state claims deemed "intellectual property" claims by title—without reference to the substance—are excluded from the CDA's reach. As Defendant argued in its motion, however, the case Plaintiff relies on, *Friendfinder*, was wrongly decided in part because it failed to take into account the fact that federal intellectual property claims of the type Congress intended to exclude from the CDA's reach are all intellectual property laws that protect *commercial interests* in property. (Mot. at 12). Failure to recognize such a limitation values form over substance and leads to suits much like the this one where a Plaintiff attempts to artfully

9

plead what is in substance a defamation action (hurt feelings resulting from an alleged false use of plaintiff's "good name" in connection with undesirable material) as a nominal "intellectual property" claim and avoid the CDA's bar.  Such a result not only frustrates the purpose of the CDA, but also would expose search engines and other websites displaying third-party content to a slew of new lawsuits identical in substance to those the CDA was intended to prevent.  *Zeran v. America Online, Inc.*, 129 F.3d 327, 330-31 (4th Cir. 1997).  Indeed, the only federal appellate court to address this specific issue determined that state law intellectual property claims do not qualify as intellectual property claims under the CDA.  *Perfect 10, Inc. v. CCBill, LLC*, 488 F. 3d 1102 (9th Cir.) *cert. denied* 128 S.Ct. 709 (2007).

## VIII.   Yahoo! is Entitled to CDA Immunity as a Publisher

Plaintiff claims that Yahoo! is not a speaker or publisher of the content at issue, and thus is not entitled to CDA immunity.  According to Plaintiff's own complaint, however, Yahoo! *publishes* statements that allegedly falsely link Plaintiff to certain products with which she would rather not be associated.  As Plaintiff explains, defamatory matter "exposes the other to … ridicule, degradation or disgrace in society or injury in the other's business or occupation."  (Resp. at 29 (citing Wis. Stat. § 942.01(1)).  The complaint's allegations fall squarely within Plaintiff's definition.  The alleged acts purportedly "injure[] Stayart's professional prestige, standing, and reputation among Stayart's colleagues and the public … caus[ing] embarrassment, humiliation, and other distress…"  (Compl. ¶ 58).  Likewise, mere pages before Plaintiff's claim that calling this a defamation action in disguise is "irrational," Plaintiff explains that she has suffered "emotional distress" citing the same language quoted above.  (Resp. at 19).

10

Plaintiff's attempt to distinguish Yahoo!'s conduct as "committing acts in the course of commerce" rather than acting as a publisher is similarly without merit. Publishing by definition is an "act in the course of commerce" because it presents information *to the public*. *See e.g.* Merriam-Webster Online Dictionary, publish (*available at* http://www.merriam-webster.com/dictionary/publish) (defining Publish as "to disseminate to the public.") And Yahoo!'s alleged "conduct of in the course of commerce," however, is the *publishing of third-party statements on its website* thus disseminating those statements to the public. (*See e.g.* Compl. ¶¶ 45-46).

## IX.    Conclusion

For the reasons set forth herein and in Yahoo!'s principal brief in support of its motion to dismiss, Yahoo! respectfully requests that this Court dismiss Plaintiff's complaint with prejudice.

Dated: May 17, 2010

Respectfully submitted,

 s/ Christian S. Genetski
Christian S. Genetski
Zwillinger Genetski LLP
1705 N St NW
Washington, DC 20036
Tel: (202) 296-3585
Fax: (202) 747-3121
christian@zwillgen.com
*Counsel for Defendant Yahoo! Inc.*

11

## CERTIFICATE OF SERVICE

I hereby certify that on May 17, 2010, I electronically filed the preceding REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to:

**Gregory A. Stayart**
72wk96@elknet.net

/s/ Christian S. Genetski

12