IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

BEVERLY STAYART, )
a/k/a BEV STAYART, )
an individual, )
                                  )
               Plaintiff, )
                                  )    Case No. 10-C-0043-LA
     v. )
                                  )    Hon. Lynn S. Adelman
YAHOO! INC., )
a Delaware corporation, )
                                  )
              Defendant. )

**PLAINTIFF BEVERLY STAYART'S MOTION
TO ALTER OR AMEND JUDGMENT PURSUANT
TO RULE 59(e), F.R.C.P AND REQUEST FOR CLARIFICATION**

     NOW COMES Plaintiff, Beverly Stayart, a/k/a Bev Stayart ("Stayart"), by her undersigned counsel, and pursuant to Rule 59(e), F.R.C.P., moves this court to alter or amend its judgment entered in this matter on March 8, 2011. Plaintiff also requests clarification of this court's accompanying order and decision of March 8, 2011. In support thereof, Stayart alleges as follows:

**INTRODUCTION**

     In this action, it is alleged that internet search engine Yahoo has misappropriated Stayart's name in the keyword phrase "bev stayart levitra" which Yahoo then sells to advertisers under its Sponsored Search® advertising program. This is allegedly in violation of Wisconsin statutory and common law. Jurisdiction is premised on diversity jurisdiction, pursuant to 28 U.S.C. §1332(a).

     On March 8, 2011, this court granted Yahoo's motion to dismiss, pursuant to Rule 12(b)(6), F.R.C.P. This court found that Stayart had not established that the present controversy

exceeded the jurisdictional minimum of $75,000 (Decision and Order of March 8, 2011, Document #19, at 3-4). The court also found that Stayart had not stated a claim under Wisconsin law (*Id.*, at 4-5).

## ARGUMENT

A. <u>Standards for a Motion to Alter or Amend a Judgment</u>

A party may properly used a motion to alter or amend a judgment under Rule 59(e), F.R.C.P., to request the trial court to correct errors of law or mistakes of fact in its judgment. *United States Labor Party v. Oremus*, 619 F. 2d 683 (7th Cir. 1980). While 59(e), F.R.C.P., refers specifically only to alteration or amendment of a "judgment," it has been broadly construed as permitting the trial court to vacate and set aside orders disposing of actions before trial, including dismissal orders. *A. D. Weiss Lithograph Co. v. Illinois Adhesives Products Co.*, 705 F. 2d 249 (7th Cir. 1983); *American Family Life Assurance Co. v. Planned Marketing Associates Inc.*, 389 F. Supp. 1141 (E.D. Va. 1974).

It is also appropriate to seek reconsideration when the applicable law has changed since an issue was submitted to the court. *National Union Fire Insurance Co. v. Continental Illinois Corp.*, 116 F.R.D. 252 (N.D. Ill. 1987); *Quaker Alloy Casting Co. v. Gulfco Industries, Inc.*, 123 F.R.D. 282 (N.D. Ill. 1988).

B. <u>A Change in the Law Has Occurred</u>

Stayart requests that this court reconsider its decision and order of March 8, 2011, based on a recent change in the case law which supports the allegations in her complaint.

In *Daniel Jurin v. Google Inc.*, No. 2-09-cv-03065-MCE-KJM, 695 F. Supp. 2d 1117 (E.D. Cal. 2010), at issue was Google's keyword suggestion tool in its for-profit AdWords Program. Jurin sued Google because Google's AdWords program suggested "styrotrim," his

2

trademark for building material, and then displayed certain "Sponsored Links" ads of his competitors when internet users searched for this term.

Jurin urged that Google's AdWords program and its keyword suggestion tool caused a false association between Jurin's building material and those of his competitors, in violation of the Lanham Act.

As in *Jurin*, Stayart challenges Yahoo's practice of selling advertising, or advertising placement, tied to the purchase of keywords. As in *Jurin*, Stayart urges that Yahoo's Sponsored Search® program and its keyword suggestion tool ("Also try: bev stayart levitra") creates a false association between her and levitra.

Thus, on *each* and *every* page of the 1,630 natural search results for "bev stayart" on Yahoo's search engine, Yahoo displays the same header and footer "Also try: bev stayart levitra" (Complaint, January 20, 2010, Document #1, ¶ 41; Exhibits 5-6). Two "Sponsored Results" ads selling levitra, under Yahoo's Sponsored Search® program, also appear on the first page of Yahoo's search results when Stayart clicks on the header "Also try: bev stayart levitra" (*Id.*, Complaint, ¶ 46; Exhibit 7).[1]

According to the complaint, Yahoo's described conduct falsely implies Stayart endorses levitra, and defrauds the public by implying that she has a personal pecuniary interest in levitra (*Id.*, ¶¶ 50, 58).

Judge Morrison C. England, Jr. of the United States District Court in Sacramento, California, initially dismissed Jurin's suit in early 2010.[2] Judge England initially held that

---

[1] There were more "Sponsored Results" ads appearing on additional Yahoo search result pages which were not attached to Stayart's complaint (Plaintiff Beverly Stayart's Response to Defendant Yahoo! Inc.'s Motion to Dismiss Counts I and II of Plaintiff's Complaint, Document #15, May 2010, at 10, n.11).
[2] Judge England's 2010 decision in *Jurin* was *cited* and *quoted* by Yahoo in urging dismissal of Stayart's complaint. *See,* Defendant Yahoo's Memorandum of Law in support of its Motion to Dismiss Counts One and Two of Plaintiff's Complaint, Document #10, March 22, 2010, at 11-12.

3

Google had not in any way represented that it produced styrotrim products. To the extent that Jurin was arguing that Google's search results had helped facilitate confusion among consumers, that was a "highly attenuated" argument. Jurin was granted leave to file a second amended complaint, however.

Jurin then filed a new complaint. Google responded with a motion to dismiss. On reconsideration, Judge England recently refused to dismiss Jurin's false association claim. *Daniel Jurin v. Google Inc.*, 2:09-c.v.-03065-MCE-KJM (E.D. Cal., Document #50, Memorandum and Order, February 15, 2011).

Judge England concluded that Google has <u>two</u> distinct businesses based on the allegations in Jurin's Second Amended Complaint (the indexing of websites and the sale of advertising keywords). He explained (*Id.*, at 2-3):

> Defendant is a highly recognized corporation most known for its widely used search engine website. As part of operating its search engine, Defendant "indexes" websites, and collects information regarding their contents so that it, in turn, can store the information for use in formulas which respond to search queries. Generally, when a user enters a query into Defendant's website, the search engine will process relevant websites based on several information factors and then return results to the user.
>
> Web designers routinely use this process to influence their ranking on defendant's results page. Prior to building a site, web designers will often conduct a keyword search using various available keyword tools in order to determine what terms or phrases internet users most commonly search for. A web designer will then build its site around more popular search terms in order to ensure a higher rank on a search engine results page.
>
> Additionally, those with more capital may advertise their websites by "bidding" on keywords. A web designer can construct an ad using popular keywords, and then pay a search engine provider a fee to bid on those keywords in an effort to appear on a search engine results page as a "Sponsored Link" whenever users enter those keywords in their search queries. The higher a web designer bids, the higher the "Sponsored Links" appear either at the top or along the side of a search engine results page. *As part of its business, Defendant allows advertisers to bid on keywords in a program called "Google AdWords" ("AdWords") and through this program, encourages advertisers to bid on additional relevant*

*keywords using a keyword suggestion tool"* (emphasis added).

In Jurin's Second Amended Complaint, he urged that, through AdWords, Google misappropriated the name "styrotrim" for its own profit. Google allowed, and encouraged, Jurin's competitors to bid on the keyword "styrotrim" and caused their advertisements to appear as "Sponsored Links" on search results pages whenever an internet user searches for "styrotrim." *Id.*, at 4. Google's use of its AdWords program, together with its keyword suggestion tool, allegedly caused a false association between Jurin's building material and those of his competitors. *Id.*, at 9.

Jurin further argued that internet users have a reasonable expectation that websites provided to them by Google on search results pages are associated with Jurin. Jurin claimed that consumers may become "confused, mistaken, misled and/or deceived" that the "Sponsored Links" are affiliated with Jurin. *Id., at 7.*

In moving to dismiss, Google argued that it was only a search engine, displaying search results, not a producer of building materials, and not properly a defendant under the Lanham Act. *Id.*, at 9.

Judge England refused to dismiss Jurin's Second Amended Complaint, holding that it was unnecessary for Google to be a producer of building materials, competing with Jurin, to face a false association claim. *Id.*, at 12-13. Judge England relied on the broad language of the Lanham Act and its legislative history.

Jurin's argument was no longer "highly attenuated." Judge England stated (*Id.*, at 12, n.4):

> To the extent that this conclusion runs counter to the court's previous orders (ECF Nos. 19, 39) on Defendant's prior Motions to Dismiss, the Court has now concluded that the analysis set forth herein is the *correct* one. Any earlier determination to the contrary is hereby revised in accordance with the

5

provisions of Federal Rule of Civil Procedure 54(b) (emphasis added).

The allegations in Stayart's suit under Wisconsin law clearly closely mirror the allegations in Jurin's suit under the Lanham Act. Given Judge England's recent change in position, upholding Jurin's complaint, this court is asked to reconsider its dismissal order. This court is particularly asked to review, in light of the February 2011 decision in *Jurin*, its view that (1) Yahoo is not using Stayart's name for purposes of advertising, and (2) Yahoo and its advertisers are not receiving a pecuniary benefit from their use of Stayart's name (Decision and Order, March 8, 2011, Document #19, at 4).

### C. Request for Clarification

Stayart requests clarification of this court's ruling of March 8, 2011, as well. Twice this court indicates that Stayart "alleges no facts which suggest that her name has any commercial value" (Decision and Order, March 8, 2011, Document #19, at 3,4).

It is not clear from these statements if this court has made a ruling of law that only a person whose name has commercial value may sue for invasion of privacy under Wisconsin law. This should be clarified to provide a clear record for future litigants.

If these are conclusions of law, they directly conflict with Wis. Stats. § 995.50(2)(b) and *Hirsch v. S. C. Johnson & Son*, 90 Wis. 2d 379 (1979).

The Wisconsin privacy statute contains no requirement that a plaintiff must show that their name has commercial value. The plaintiff need only be a "living person" to sue for misappropriation of their name, portrait or picture if it is used without prior written consent for purposes of advertising or trade. § 995.50(2)(b). *Accord: Conrad v. Madison Festivals, Inc.*, 2009 WL 3018031 (W.D. Wis.).

6

The Wisconsin common law likewise does not have any requirement of commercial value for misappropriation of one's name or likeness. Although the plaintiff in *Hirsch, supra* was a former college and professional football player whose name had commercial value, there is no language in the Supreme Court's opinion limiting relief to celebrities.[3]

If the court's statements represent a finding of fact, then recognized principles of res judicata and collateral estoppel could prevent Stayart from relitigating the issue of standing in the future in state court.

But this factual finding directly conflicts with the decision of Judge Randa in *Stayart v. Yahoo! Inc.*, 651 F. Supp. 2d 873 (E.D. Wis. 2009). While Judge Randa held that Stayart's name lacked commercial value for purposes of the Lanham Act (651 F. Supp. 2d at 882), she was free to re-file state law claims for invasion of privacy without prejudice under a "pure appropriation theory" (651 F. Supp. 2d at 887).

If this court has made findings of fact, it should clarify under what circumstances Stayart can re-file related claims in a Wisconsin court.

D.  Mistakes of Fact Occurred

This court also has made errors of misinterpretation.

The litany of facts which this court found absent from the complaint are, in fact, present. When those facts are acknowledged, together with the reasonable inferences from those facts, Stayart has indeed stated a cause of action for invasion of privacy under Wisconsin law.

With reference to the commercial value in Stayart's name for purposes of advertising or trade, Stayart alleges (Complaint, January 19, 2010, Document 1, at 3-4):

> ¶ 13.  Stayart regularly uses the internet to further her public advocacy of animal protection programs and her genealogy research.

---

[3] Hirsch was decided under Wisconsin's common law because the facts occurred before the effective date of the statutory remedy.

7

¶ 14. Stayart is a contributor to an online discussion forum for genealogical historical research concerning the Siouan people (Saponi) at www.saponitown.com. This third-party website contains Stayart's photo, address, and other personal information.

¶ 15. Stayart's periodic, scholarly posts on this third-party website have generated approximately 20,000 hits (online visitors) during the past four years.

¶ 16. Two poems written and copyrighted by Stayart appear on three Danish websites supporting the preservation of the baby seal population in eastern Canada.

¶ 17. Stayart is the <u>only</u> "Beverly Stayart" and "Bev Stayart" on the internet. She uses both her names in her endeavors.

¶ 18. Stayart's name has commercial value for advertising purposes or for purposes of trade because of her public advocacy activities on behalf of animals, her positive and wholesome image, and the popularity of her scholarly posts on the internet at www.saponitown.com.

¶ 19. Stayart's name has also become a keyword phrase on the internet.

¶ 20. According to the internet analytics firm, Compete.com, Stayart's name is a competitive keyword phrase. Between January 15 and April 15, 2009, at least five destination websites have received traffic from internet searchers using the search term "Beverly Stayart." *See*, Exhibits 1 and 2, attached hereto.

¶ 21. The same is true with regard to the time period February 11 through May 12, 2009. *See*, Exhibit 3, attached hereto.

With reference to the pecuniary benefit which Yahoo derives from its association of Stayart's name with levitra, Stayart alleges (*Id.*, at 4):

¶ 24. Stayart has never given Yahoo, or any third party, any permission, authority or license to use or sell the right to use the name "Beverly Stayart" or "Bev Stayart" for the permission or sale of any goods or services on the internet, or in any other media, either directly or indirectly.

Stayart further alleges (*Id.*, at 7-9):

¶ 36. On December 17, 2009, Stayart visited Yahoo's search engine at www.yahoo.com from a computer in Walworth County, Wisconsin, and used the search term "Bev Stayart" to find information about herself on its search engine.

¶ 37. When she typed in "Bev Stayart", Yahoo's "search assist" box automatically

8

displayed the phrase "bev stayart levitra" even before she could press the "enter" key for "Bev Stayart".

¶ 38.   Levitra® is the brand name for a nationally advertised oral treatment for sexual dysfunction, marketed and distributed by Schering-Plough Corporation of Kenilworth, New Jersey.

¶ 39.   After then pressing the "enter" key, a "header" was displayed before the first listed search result, which stated "Also try: bev stayart levitra".  *See*, Exhibit 5, attached hereto.

¶ 40.   Additionally, a "footer" was displayed at the bottom of the page after the last listed search result, which similarly stated: "Also try: bev stayart levitra".  *See*, Exhibit 5, attached hereto.

¶ 41.   On December 17, 2009 Stayart found a total of 1,630 search results for "Bev Stayart" appearing on Yahoo's search engine.  On each and every page of these search results, there appeared the same "header" and "footer", associating Stayart with "levitra" in the manner described in Paragraphs 37 to 40 above.

\*          \*          \*

¶ 43.   Stayart is informed and believes, and, on the basis of such information and belief, alleges that Yahoo created these described "headers" and "footers" which are displayed on its search engine in connection with its search results for "Bev Stayart".

¶ 44.   Stayart is informed and believes, and, on the basis of such information and belief, alleges that Yahoo also created the phrase "bev stayart levitra" which automatically appears in Yahoo's search assist boxes in connection with the displayed results for "Bev Stayart".  Yahoo solely controls what it displays in its search assist boxes, headers and footers on its website.

¶ 45.   By providing the suggested searches at the top and bottom of the screen, such as "bev stayart levitra", Yahoo has crossed the border, expressed in the Communications Decency Act ("CDA") from a "hosting site" to a "provider of content" which makes it responsible for the content it is providing.

¶ 46.   On December 17, 2009, Stayart found 399 search results for "bev stayart levitra" on Yahoo's search engine after clicking on the header "Also try: bev stayart levitra" in Yahoo's search assist box at the top of the first page.  *See,* Exhibit 7, attached hereto.

Stayart then found two "Sponsored Results" ads selling levitra on the first page of these

search results.

9

The first ad, at the upper right, reads (*Id*., Exhibit 7):

> Purchase 20 Mg Levitra
> Online
> Online Levitra Pharmacy! Licensed
> Doctors & Online Prescriptions.
> www.Levitra.kwikmed.com

Directly below this ad Yahoo reminds its advertising clients:

> See your message here . . .

The second ad at the bottom of this page reads (*Id.*, Exhibit 7):

> Purchase 20 Mg Levitra Online
> Online Levitra Pharmacy! Licensed Doctors & Online Prescriptions
> www.Levitra.kwikmed.com

Stayart then concludes:

¶ 50. Yahoo has purposefully employed these deceptive tactics, through its search assist boxes, headers and footers, in the manner described in paragraphs 37 through 45, to Increase Yahoo's web traffic by falsely implying Stayart's endorsement of "levitra".

¶ 51. Stayart is informed and believes, and, on the basis of such information and belief, alleges that Yahoo gained substantial pecuniary benefit through increased web traffic from the unauthorized use of her name in connection with the advertising and promotion of "levitra" in the manner described in paragraphs 37 to 45.

These well-pleaded facts were never referred to by this court in its abbreviated 4-page opinion. These well-pleaded facts must be accepted as true by this court. *Erickson v. Pardus*, 127 S. Ct. 2197, 2199 (2007) (*per curiam*). These well-pleaded factual allegations are also "enough to raise the right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 §n. 3 (2007). The right to relief is plausible, *not* implausible.

This is because Stayart's complaint accurately reflects the operation of Yahoo's Sponsored Search® business model and its repeated misappropriation of her name to sell internet ads.

10

Here, Yahoo encourages internet advertisers to bid on the keyword phrase "bev stayart levitra." Yahoo alone created this keyword suggestion tool. When an internet user clicks on Yahoo's suggested search in its headers and footers "Also try: bev stayart levitra", "Sponsored Results" ads are displayed on Yahoo's website.

The right of free speech is *not* unlimited, including on the internet. *United States v. William White*, 610 F. 3d 956 (7th Cir. 2010). And commercial speech (*i.e.,* advertising) is entitled to the least protection under the First Amendment. Advertising can be succinctly defined as mass marketing. In this regard, the internet offers advertisers a truly worldwide forum to reach millions.

By creating and suggesting keywords to its advertising clients, and then tying the placement of advertising to such keywords, Yahoo does much more than publish third-party content on the internet. When that keyword is not a generic term, but the name of a living person, Yahoo violates Wisconsin law, as well as the law of many other jurisdictions which also prohibit the misappropriation of name or likeness. *See, e.g., Lugosi v. Universal Pictures*, 139 Cal. Rptr. 35, 37 (Cal. 2d Dist. 1977):

> The tie-up of one's name, face and/or likeness with a business, product, or service creates a tangible and saleable product in much the same way as property may be created by one who organizes under his name a business to build and or sell houses according to a fixed plan or who writes a book, paints a picture or creates an invention.

This court's decision and order of March 8, 2011, is erroneous because it is based on mistakes of fact, and is contrary to Stayart's complaint. It is tantamount to issuing a license to any search engine to use the pretext of free speech to conscript any Wisconsin citizen to serve as an unwitting and unpaid endorser of products and services on the internet.

This is not and should not be the law.

If one becomes popular because of scholarly posts on the internet, or poetry writing, and allows publicity to be given to such talent and accomplishments, commercial advertisers, with the help of companies like Yahoo, can seize on such popularity to increase their sales of any article without compensation of any kind for the use of one's name or picture.

This court's decision is contrary to usage and custom, apart from violating the common law and statutory law of Wisconsin. Advertisers are undoubtedly in the habit of buying the right to use one's name or picture to create interest, demand and good will for their merchandise. But by virtue of this court's decision, any man, woman or child may have their name or picture used with impunity in connection with the placement of internet advertising, as contrasted with print, billboard or television advertising.

This court also erred in concluding that Stayart's complaint did not sufficiently establish the jurisdictional minimum of more than $75,000 in controversy for diversity (Decision and Order, at 3).

Yahoo is clearly using Stayart's name to sell advertising by its keyword phrase "bev stayart levitra" and its suggested searches in its headers and footers "Also try: bev stayart levitra". Without discovery, the amount of revenue Yahoo has generated is currently unknown. Under Wis. Stats § 995.50(1), a successful plaintiff bringing an invasion of privacy suit is entitled to any or all of three remedies:

- (a) [e]quitable relief to prevent and restrain such invasion, excluding prior restraint. . . ;
- (b) [c]ompensatory damages, based either on plaintiff's loss or defendant's unjust enrichment; and
- (c) reasonable amount for attorney fees (emphasis added).

12

Compensatory damages are not limited to pecuniary loss alone. *Id.*, 995(4). But damages will "not be presumed in the absence of proof." *Id.*

Stayart also seeks punitive damages from Yahoo on the grounds that its conduct was intentional, deliberate, and in disregard of Stayart's rights. Such damages may be available pursuant to Wis. Stats. § 895.043.

Where a plaintiff seeks unliquidated damages for an intentional tort, such as invasion of privacy, punitive damages are properly considered in determining whether a party has a claim for the requisite amount in controversy. *Bell v. Preferred Life Assurance Soc.*, 320 U.S. 238, 240 (1943); *United Catholic Schools v. Universal Card Serv.*, 34 F. Supp. 2d 714, 717 (E.D. Wis. 1991); *Anthony v. Security Pac. Fin. Serv., Inc.*, 75 F. 3d 311, 315 (7th Cir. 1996). Similarly, attorney fees may be included in calculating the amount in controversy determination for diversity jurisdiction when a state statute permits the payment of such fees. *Missouri State Life Ins. Co. v. Jones*, 290 U.S. 199, 202 (1933).

Given the possibility of compensatory damages, attorneys fees and punitive damages, it is *not* a legal certainty that Stayart will not recover more than $75,000 in this suit. But this is the test Yahoo must satisfy to warrant dismissal. *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938).

This court also downplayed Stayart's request for damages for emotional distress (Decision and Order, at 3-4). This was clearly improper. Whether Stayart suffered emotional distress and its extent are jury questions, <u>not</u> susceptible to resolution by a motion to dismiss. In measuring damages for the misappropriation of a person's name, an important factor is the nature and extent of the appropriation. Restatement (Third) of Unfair Competition § 49(2)(b) (1995). Here, the name "bev stayart" was repeatedly connected on

13

the internet by Yahoo to a male sexual dysfunction drug to place "Sponsored Results" advertising under its Sponsored Search® program.

And in *United States v. Valistrieri*, 981 F. 2d 916, 932 (7th Cir. 1992), the court held that the more inherently degrading or humiliating a defendant's action is, the more reasonable it is to infer that a person would suffer humiliation or distress from that action. Consequently, somewhat more conclusory evidence of emotional distress would be acceptable to support an award of emotional distress. This rule should be equally true at the pleading stage.

## CONCLUSION

For all of the foregoing reasons, this court should vacate and set aside its decision of March 8, 2011; deny Yahoo's motion to dismiss; and require Yahoo to answer Stayart's complaint herein. In the alternative, this court is asked to clarify its opinion and order in the manner set forth herein.

                                      Respectfully submitted,

                                      By    /s/ Gregory A. Stayart
                                             Gregory A. Stayart
                                             N5577 Cobblestone Road
                                             Elkhorn, WI 53121-3820
                                             (262) 745-7395

                                             <u>Counsel for Beverly Stayart</u>

## CERTIFICATE OF SERVICE

I hereby certify that on March 21, 2011, I electronically filed with the clerk of the court the accompanying Plaintiff Beverly Stayart's Motion to Alter or Amend Judgment Pursuant to Rule 59(e), F.R.C.P and Request for Clarification, using the ECF System which will automatically send notification of such filing to Yahoo's counsel:

>Christian Genetski
>christian@zwilligen.com

>/s/ Gregory A. Stayart